SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
ROBERT K. SAHYAN, Cal. Bar No. 253763
MATT R. KLINGER, Cal. Bar No. 307362
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
Email: okatz@sheppardmullin.com
rsahyan@sheppardmullin.com
mklinger@sheppardmullin.com

Counsel for Debtor Old PXPRT, Inc., f/k/a PopExpert, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>Old PXPRT, Inc., f/k/a PopExpert, Inc.,<br><br>Debtor. | Case No.: 16-30390<br><br>Chapter 11<br><br>**DEBTOR'S MOTION TO DISMISS CHAPTER 11 CASE AND FOR RELATED RELIEF**<br><br>Date: December 1, 2016<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>450 Golden Gate Avenue<br>Courtroom 19<br>San Francisco, CA 94111<br>Judge: Honorable Hannah L. Blumenstiel |

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..... 1
II. FACTUAL BACKGROUND ..... 3
A. The Debtor ..... 3
B. The Bankruptcy Filing ..... 3
C. The Committee ..... 3
D. The Debtor's Sale of Assets and End of Operations ..... 3
E. Remaining Assets of the Estate ..... 4
F. Claims Against the Estate ..... 4
1. Administrative Claims ..... 4
2. Priority Claims. ..... 5
3. General Unsecured Claims. ..... 5
G. Proposed Settlement Agreement ..... 8
III. PROPOSED DISMISSAL PROCEDURES ..... 9
1. Proposed Payment of Claims. ..... 9
2. Distribution of Additional Funds Received by Debtor. ..... 9
3. Orders To Remain Effective. ..... 10
IV. LEGAL ARGUMENT ..... 10
A. This Court May Dismiss this Case Without Cause. ..... 10
B. Alternatively, this Court May Dismiss the Case for Cause. ..... 10
V. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*In re Bronson*
2013 WL 2350791 (9th Cir. B.A.P. 2013) ........ 11

*In re Buffet Partners, L.P.*
2014 WL 3735804 (Bankr. N.D. Tex. July 28, 2014) ........ 13

*In re MELP, Ltd.*
143 B.R. 890 (Bankr. E.D. Mo. 1992) ........ 11

*In re Products Int'l Co.*
395 B.R. 101 (Bankr. D. Ariz. 2008) ........ 11

*In re YBA Nineteen, LLC*
505 B.R. 289 (S.D. Cal. 2014) ........ 11

DOCKETED CASES

*In re Clement Support Services*
No. 15-50794-MEH (Bankr. N.D. Cal. Order entered December 17, 2015) (Hammond, J.) ........ 13

*In re Easy Life Furniture Inc*
No. 14-12713-CB (Bankr. C.D. Cal Order entered March 23, 2015) (Bauer, J.) ........ 13

*In re William M. Lansdale*
8:09-bk-22982-ES (Bankr. C.D. Cal. Order entered March 4, 2010) (Smith, J.) ........ 13

FEDERAL STATUTES

11 U.S.C. § 1112(b)(1) ........ 10, 11
11 U.S.C. § 1112(b)(4) ........ 11

28 U.S.C. § 157 ........ 1
28 U.S.C. § 1334 ........ 1
28 U.S.C. § 157(b)(2)(A), (B), and (O) ........ 1

Chapter 11 of the Bankruptcy Code ........ 1, 2, 3,12, 14

Bankruptcy Code

§ 305(a) .......... 1, 10
§ 305(a)(1) .......... 10
§ 507(a) .......... 12
§ 507(a)(4) .......... 5
§ 507(a)(8) .......... 5
§ 1112(b) .......... 10, 11
§ 1112(b)(2) .......... 11
§ 1112(b)(4) .......... 11


Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 4 of 18

Old PXPRT, Inc. f/k/a PopExpert, Inc., the debtor ("Debtor") hereby moves for an order dismissing this chapter 11 bankruptcy case and providing for related relief (the "Motion"). Specifically, by the Motion the Debtor is seeking an order: (i) providing that all orders entered in this bankruptcy case shall remain in full force and effect following the dismissal, (ii) authorizing the Debtor to make payments on account of the scheduled and/or filed claims in accordance with the priority scheme under the Bankruptcy Code, (iii) dismissing the Debtor's chapter 11 case, and (iv) granting related relief.

The statutory predicates for the relief requested in this motion are Bankruptcy Code sections 305(a) and 1112(b). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

This Motion is based on the discussion below, the supporting declaration of Ingrid Sanders, the Debtor's Chief Executive Officer ("Ms. Sanders"), the Notice filed concurrently herewith, and such other arguments and evidence that may be submitted prior to or at the hearing on this Motion.

# I.

# PRELIMINARY STATEMENT

This Motion requests Court approval of an orderly dismissal process sometimes referred to as a "structured dismissal." Generally speaking, the Motion requests this Court to dismiss the case and approve the distribution of estate assets to creditors at the time and in the manner set forth in the "Dismissal Procedures" described below in this Motion. Notably, unlike the types of structured dismissal seen in other jurisdictions, the dismissal here does not: seek issuance of any injunctions, provide for any releases, or run contrary to the priority scheme of the Bankruptcy Code.

The structured dismissal requested here is appropriate for several reasons. First, the Debtor has sold substantially all of its assets pursuant to an order of this court and has ceased operations. As such, the estate has no remaining assets to be liquidated or revenue-generating operations.

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 5 of 18

Second, with no continued operations or assets to be liquidated, the Debtor and creditors will not benefit from proposing or confirming a chapter 11 plan of reorganization. Requiring the Debtor to file a chapter 11 plan would provide no benefit to creditors. In fact, because of the significant costs associated with preparing and confirming a chapter 11 plan, prosecuting a chapter 11 plan would likely harm the interest of the creditors as it would substantially reduce the size of the estate available for distribution to creditors. Likewise, converting the case to chapter 7 and appointing a trustee would provide no benefit to creditors. Conversion to chapter 7 would come at the cost of reducing the cash remaining from the asset sale and add another layer of administrative claims, with no potential upside to creditors considering that no material assets remain to be monetized or claims to be pursued. There are also no adversary proceedings in this case, either pending or contemplated.

Third, the universe of the prepetition claims against the Debtor is now known as the bar dates for all creditors to file proofs of claim in this bankruptcy case have passed. The Debtor has less than sixty-five creditors with scheduled or filed claims against its estate and is capable itself of administering and distributing its estate to these creditors efficiently and effectively. In addition, the Debtor has negotiated a global settlement resolving the prepetition litigation involving Debtor, which settlement is subject to the Court's consideration at the same time as the hearing on this Motion. Subject to the approval of such settlement, there will be no claims that remain disputed.

The best resolution of this case is through dismissing it as requested in this Motion. Such dismissal provides a speedy and cost-efficient exit that helps avoid further diminution of estate assets and a concomitant decrease in the distributions to creditors. This case cannot bear the expense or delay of a chapter 11 plan process. On the other hand, if the case remains open, the Debtor will continue to incur additional administrative expenses for no meaningful purpose. Importantly, the Debtor has discussed the structured dismissal proposed herein with both the Official Committee of Unsecured Creditors appointed in this

bankruptcy case (the "Committee"). The Committee is supportive of the process as being in the best interests of the Debtor's creditors.

## II.

## FACTUAL BACKGROUND

### A. The Debtor

Prior to its sale of assets, the Debtor was engaged in the development and operations of a number of internet platforms that provide on demand access to lifelong learning. Its platforms enabled customers to learn from top experts around topics that help customers improve at life, work, and play. The company, was founded in 2012 and was based in San Francisco, California. It funded its initial operations largely through funding from investors in exchange for promissory notes. Ms. Sanders was the Debtor's founding CEO.

### B. The Bankruptcy Filing

On April 12, 2016 (the "Petition Date"), the Debtor commenced Case No. 16-30390 in this Court (the "Bankruptcy Case") by filing a voluntary petition under chapter 11 of the Bankruptcy Code. As reflected in the declaration of Ms. Sanders filed in support of the Debtor's bankruptcy filing and first day motions for relief [Dkt. No. 6], the Bankruptcy Case was filed to implement an orderly sale of the Debtor's assets, which was intended to maximize the value of those assets for the benefit of the Debtor's creditors, while limiting ongoing administrative expenses. No trustee or examiner has been appointed.

### C. The Committee

On May 5, 2016, the United States Trustee filed a notice of appointment of the Committee in the Bankruptcy Case. [Dkt. No. 41].

### D. The Debtor's Sale of Assets and End of Operations

On May 16, 2016, the Debtor filed a motion for the sale of substantial all of its assets to a stalking horse bidder and subject to an auction. The Debtor held an auction on June 2, 2016, at which auction the Debtor's assets were sold for $534,000 (the "Sale Proceeds"). The sale closed on June 8, 2016. The Debtor ceased regular business

operations, including all revenue-generating operations, immediately after the closing of the sale.

**E. Remaining Assets of the Estate**

Following the payment of administrative expenses, including professional fees incurred through July 31, 2016 (which have been allowed by the Court on an interim basis), the Sale Proceeds that remain in the estate are approximately $235,000. The Debtor does not anticipate receiving any additional funds now that it has sold all its assets and ceased all revenue-generating operations.

The only other potential assets are claims of the Debtor asserted in the state court litigation commenced prepetition against the Debtor's former CEO and OMC (which are described further below). Those claims are being released as part of the consideration being received under the Settlement Agreement that is currently subject to the Court's consideration pursuant to a separate motion being heard concurrently with this Motion. The Debtor is not aware of any other material estate assets.

The Debtor has also performed a preference analysis and concluded there are no preference claims worth filing. As such, the Debtor does not expect the value of its estate will increase beyond its current value by any method.

**F. Claims Against the Estate.**

The bar date in this Bankruptcy Case for non-governmental units to file proofs of claim passed on August 8, 2016. The bar date for governmental units to file proofs of claim passed on October 10, 2016. Thus, the universe of claims is known, as is the universe of the Debtor's assets. The following is a description of the claims against the Debtor's assets.

1. <u>Administrative Claims</u>

The administrative claims that remain outstanding consist of professional fee claims for fees and expenses incurred after July 31, 2016 (as the Debtor has paid the professional fee claims incurred through such date and previously allowed by the Court on an interim basis) and charges for the Debtor's post-petition maintenance of workers' compensation

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 8 of 18

insurance. The professionals will be filing final fee applications, which will be subject to the review and approval of the Court at the hearing on the final fee applications, which is anticipated to be held shortly after the hearing on this Motion. The estimated outstanding administrative claims are as follows ("Chart 1"):

| Claimant | Role | Estimated Amount |
|---|---|---|
| Sheppard, Mullin, Richter & Hampton LLP | Debtor's Counsel | $ 35,000.00 |
| Pachulski, Stang, Ziehl & Jones LLP | Committee Counsel | $ 15,000.00 |
| Bachecki, Crom & Co., LLP | Accountant | $ 19,750.00 |
| Hartford Insurance Co. of the Midwest | Insurer | $ 148.00 |
| U.S. Trustee | Quarterly Fees | $ 1,950.00 |
| | ***Total*** | ***$ 71,848.00*** |

In addition, the Debtor is current on its obligation to pay the fees due to the Office of the United States Trustee through September 30, 2016. The Debtor anticipates $1,950 will be due on account of such fees for the period after such date and taking into effect the distributions described here to creditors.

2. Priority Claims.

There are four prepetition claims asserted against the Debtor's estate as a non-secured priority claims, totaling $15,731.67. The following chart ("Chart 2") lists all such claims:

| Claimant | Claim No. | Priority | Amount |
|---|---|---|---|
| Ingrid Sanders | 26 | 507(a)(4) | $ 12,850.00 |
| Franchise Tax Board | 3 | 507(a)(8) | $ 1,617.67 |
| Internal Revenue Service | 13 | 507(a)(8) | $ 200.00 |
| City and County of San Francisco Office of the Treasurer Tax Collector Bureau of Delinquent Revenue | 28 | 507(a)(8) | $ 1,064.00 |
| | | ***Total*** | ***$ 15,731.67*** |

3. General Unsecured Claims.

The remaining claims against the Debtor's estate are general unsecured claims, totaling $9,548,259.43, which are described in the following chart ("Chart 3"). The amounts reflected in Chart 3 are the scheduled amounts to the extent the claimant did not file a proof of claim, otherwise the table reflects the amount asserted in the proof of claim:

| **Claimant** | **Scheduled or POC #** | **Asserted/Scheduled Amount** |
|---|---|---|
| Ingrid Sanders | 26 | $ 129,184.57[1] |
| Alesia Brady | Scheduled | $ 1,140.00 |
| Alt Option Return LLC | Scheduled | $ 21,106.00 |
| American Express Bank FSB c/o Becket and Lee LLP | 11 and 14; (scheduled at $45,000)[2] | $ 39,717.91<br>$ 752.99 |
| Bank of America | Scheduled | $ 15,643.00 |
| Blackwater Ops | Scheduled | $ 2,000.00 |
| BMA-Colorado | Scheduled | $ 157.00 |
| Abigail Stason | Scheduled | $ 24.25 |
| Alexis Nascimento | Scheduled | $ 470.00 |
| Andia Winslow | Scheduled | $ 29.25 |
| Box Group LLC | Scheduled | $ 106,071.00 |
| Christine Hassler | Scheduled | $ 54.44 |
| Cooley LLP | 6 | $ 64,281.90 |
| Dances With Light | 1 | $ 400.00 |
| David Graham | Scheduled | $ 859.00 |
| Derek Handley | Scheduled | $ 51,203.00 |
| Emily Everett | 4 | $ 2,234.00 |
| EVC Twenty Holdings LLC | 15 | $ 159,780.82 |
| Frances Cole Jones | Scheduled | $ 37.50 |
| Foresight ASG, Inc. | 18 | $ 3,287.00 |
| Holli Thompson | Scheduled | $ 630.50 |
| HRG Works | Scheduled | $ 6,375.00 |
| Influential Marketing Group | Scheduled | $ 7,500.00 |
| Insider News Group | 2 | $ 3,000.00 |
| Intentionally Blank LLC | Scheduled | $ 1,250.00 |
| Jake Schiff | Scheduled | $ 1,240.00 |

[1] Ms. Sanders's filed claim also asserts a claim for indemnity in an unknown amount under applicable law and/or corporate documents of the Debtor (the "Indemnity Claim"). The Indemnity Claim is being resolved pursuant to the Settlement Agreement.

[2] Claims filed as POC #s 11 and 14 supersedes the scheduled claim for America Express for $45,000. Ms. Sanders, as the co-obligor under the claims in favor of American Express, is in the process of arranging for the satisfaction of claims asserted as POC #s 11 and 14 in full and will be subrogated to the right of claimant under such claims.

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 10 of 18

| Claimant | Scheduled or POC # | Asserted/Scheduled Amount |
|---|---|---|
| Jed Investments LLC | Scheduled | $ 52,866.00 |
| Jeremy Hinman Revocable Trust | 24 | $ 30,000.00 |
| Jonathan Segal | 23 | $ 50,000.00 |
| Joseph Garner | Scheduled | $ 211,222.00 |
| Josia Lebrun | Scheduled | $ 370.00 |
| Krutilla & Associates | 12 | $ 1,750.00 |
| Learn Capital | Scheduled | $ 1,165,025.00 |
| Leland Investments Inc. | 20 | $ 25,000.00 |
| Marketo | Scheduled | $ 4,889.00 |
| Michael Chasen | Scheduled | $ 47,614.00 |
| Mike Angiletta | Scheduled | $ 23,237.00 |
| Miki Agrawal | 19 | $ 25,000.00 |
| OMC | 8[3] | $ 4,129,807.73 |
| One Designation AB | 5 | $ 6,540.00 |
| Pacific Sequoia Holdings LLC | 21 | $ 1,578,136.00 |
| Radha Agrawal | 22 | $ 25,000.00 |
| Rochelle Schieck | 27 | $ 4,125.00 |
| Rockstar Group | Scheduled | $ 211,310.00 |
| Rogers Joseph O'Donnell | 10 | $ 22,601.55 |
| Ryan Weiss | 17; Scheduled[4] | $ 320.13 |
| Sadie Nardini | Scheduled | $ 9.75 |
| Salesforce | Scheduled | $ 750.00 |
| Scott Mullins | Scheduled | $ 470.00 |
| SD Squared Holdings Limited | Scheduled | $ 158,860.00 |
| Summit Mountain Holding Group LLC | Scheduled | $ 105,458.00 |
| Terri Trespicio | Scheduled | $ 195.75 |
| Visual Media Alliance | Scheduled | $ 500.00 |
| Wendy Walsh | Scheduled | $ 391.11 |
| WGI Group LLC | 25 | $ 100,000.00 |
| Wiggin LLC | Scheduled | $ 856,106.00 |
| Zoom Information | Scheduled | $ 4,900.00 |
| Franchise Tax Board | 3 | $ 43.67 |

[3] Claims filed as POC #s 8 and 28 (by OMC and Mr. Kahlow, respectively) are proposed to be allowed pursuant to the Settlement Agreement subject to the Court's approval.

[4] POC # 17 asserted in the amount of $0.00, states that the claimant did not know the appropriate amount for his claim because he did not know how many of his units the Debtor had sold. The amount represented here is the amount the Debtor scheduled as being owed to this claimant.

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 11 of 18

| Claimant | Scheduled or POC # | Asserted/Scheduled Amount |
|---|---|---|
| Hartford Fire Insurance Company | 7[5] | $ 1,007.00 |
| Aaron Kahlow | 28 | $ 42,332.61 |
| | ***Total General Unsecured*** | ***$ 9,504,266.43*** |

It should be noted that, had the asset sale not taken place, the total amount of the general unsecured claims would have likely been much larger, particularly on account of potential contract rejection damage claims and other claims.

**G. Proposed Settlement Agreement**

On November 3, 2016, the Debtor filed in the Bankruptcy Case its *Motion for Order Approving Global Settlement of Disputes* (the "Settlement Motion") [Dkt. No. 102]. In the Settlement Motion, the Debtor requests the Court, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, enter an order approving a settlement agreement (the "Settlement Agreement") among the Debtor; Ms. Sanders; OMC, a California corporation ("OMC"); and Aaron Kahlow, an individual ("Kahlow"). The Settlement Motion is set for hearing on the same date as this Motion and if the Settlement Agreement is approved, the following will take place upon, or shortly after, the effectiveness of the Settlement Agreement:

(a) Kahlow and OMC's filed proofs of claim against the Debtor shall be allowed as general unsecured claims in their asserted amount, $42,332.61 (filed as POC #28) and $4,129,807.73 (filed as POC #8), respectively;

(b) Ms. Sanders shall agree that her Indemnity Claim (asserted as part of the POC # 26) shall be fully and finally satisfied;

(c) The mutual releases set forth in the Settlement Agreement will become effective; and

[5] POC # 7 asserted a "Contingent/Unliquidated" claim. The Hartford Insurance Company has since submitted an invoice the Debtor for pre-petition services totaling $1,007.00, which amount is represented here.

(d) The ongoing litigation between the parties to the Settlement Agreement is to be dismissed with prejudice. This litigation represents the only pending litigation involving the Debtor.

**III.**

**PROPOSED DISMISSAL PROCEDURES.**

In connection with the proposed dismissal of this Bankruptcy Case, the Debtor proposes the following procedures (the "Dismissal Procedures"), for which it seeks approval in this Motion.

1. Proposed Payment of Claims.

The Debtor proposes to distribute the remaining cash from the Sale Proceeds to the creditors in accordance with the priority scheme under the Bankruptcy Code. Accordingly, the proposed distributions will be conducted to distribute the approximately $235,000 in remaining Sale Proceeds to pay the following claims in the following order: (1) payment in full of the administrative claims reflected in Chart 1 (subject to the actual amounts asserted in the final fee applications and the Court's approval of such amounts) and the fees due to the Office of the United States Trustee, (2) payment in full of the unsecured priority claims reflected in Chart 2, and (3) pro rata distribution of the balance of remaining Sale Proceeds to the holders of general unsecured claims reflected in Chart 3. The Debtor estimates that the rate of the pro rata distribution to the general unsecured claims is approximately 1.50 percent. The following describes the estimated amount of distribution for each class of creditors:

| **Priority Level** | **Claimants** | **Amount of Claims** | **Amount of Distributions** | **Percentage Distributions** |
|---|---|---|---|---|
| 1. Administrative Claims | See Chart 1 | $ 71,848.00 | $ 71,848.00 | 100% |
| 2. Unsecured Priority Claims | See Chart 2 | $ 15,731.67 | $ 15,731.67 | 100% |
| 3. General Unsecured Claims | See Chart 3 | $9,504,266.43 | $ 147,420.33 | 1.5% |
| | ***Total*** | ***$9,591,846.10*** | ***$ 235,000.00*** | |

2. Distribution of Additional Funds Received by Debtor.

Although unlikely additional funds will be by the Debtor following the dismissal of the Bankruptcy Case, to the extent any additional funds are received as such, they would be paid pro rata to the holders of general unsecured claims listed in Chart 3, until such claims are paid in full.

3. Orders To Remain Effective.

The dismissal order shall provide that orders entered in the case shall remain in full force and effect despite the dismissal. Because the professional final fee applications will yet to be heard when the Court considers this Motion, the Debtor requests that the order granting this Motion will not become effective until after entry of the Court's order on such final fee applications.

## IV.

## LEGAL ARGUMENT

### A. This Court May Dismiss this Case Without Cause.

Bankruptcy Code section 305(a)(1) provides that "[t]he court, after notice and a hearing, may dismiss a case under this title … at any time if – (1) the interests of creditors and the debtor would be better served by such dismissal…" No "cause" is required for the dismissal of a case under Section 305(a); one merely needs to establish that dismissal is in the best interests of creditors. Here, as discussed below, dismissal is clearly in the best interests of creditors.

### B. Alternatively, this Court May Dismiss the Case for Cause.

Bankruptcy Code section 1112(b) allows a court to dismiss a case for cause. The section provides in relevant part that:

> the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 14 of 18

Bankruptcy courts have broad discretion to determine whether cause exists, and once it is found, the court must then dismiss the case, convert the case to chapter 7, or appoint a trustee or examiner. *See, e.g., In re Products Int'l Co.*, 395 B.R. 101, 107 (Bankr. D. Ariz. 2008); *In re YBA Nineteen, LLC*, 505 B.R. 289, 302 (S.D. Cal. 2014); *In re Bronson*, 2013 WL 2350791 at *7 (9th Cir. B.A.P. 2013).[6]

Section 1112(b)(4) sets forth a non-exhaustive list of examples of "cause." The very first example listed is: "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4). In addition, courts have found cause to exist for dismissal when the primary purpose of the bankruptcy case has been achieved. *See, e.g., In re MELP, Ltd.*, 143 B.R. 890, 893 (Bankr. E.D. Mo. 1992) ("In this case MELP came into bankruptcy court seeking protection of the automatic stay to enable it to reorder its affairs and make peace with its creditors. This purpose has been successfully achieved.").

Here, the primary purpose of the bankruptcy has been achieved. On day one of this Bankruptcy Case, the Debtor announced its intent to sell substantially all of its assets under the benefits conferred by the Bankruptcy Code. Under the oversight of this Court, that sale has occurred. As such, the Debtor's assets have been reduced to cash and the Debtor no longer conducts any revenue-generating operations. If the Settlement Agreement is approved, the Debtor's only remaining assets (claims asserted in the prepetition state court litigation), will have been resolved. Also, the Debtor's liabilities will have been fixed and the Debtor will have no causes of action to prosecute. The Debtor, therefore, has nothing to gain by remaining in bankruptcy any longer and has nothing left to do other than

[6] Section 1112(b)(2) provides an exception to 1112(b)(1) – that is, it provides that a court may not convert or dismiss a case – where certain unusual circumstances exist. The unusual circumstances identified are two: (i) a plan will be confirmed within a reasonable time; or (ii) cause is based on an act or omission for which there is reasonable justification and which may be cured within a reasonable period of time. *See*, 11 U.S.C. § 1112(b)(2). Neither unusual circumstance is present here because no plan will be confirmed within a reasonable time in this case, and cause is not based on any particular act or omission.

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 15 of 18

distribute its assets to creditors. Clearly, this is a case where the proposed dismissal is not a *sub rosa* plan of reorganization.

In addition, any avenue other than dismissal would involve a significant waste of resources that would harm the Debtor's creditors and offer them no benefit. Keeping the case in chapter 11 would accomplish nothing but causing administrative claims to grow, especially if an effort were made to confirm a reorganization plan. Requiring the Debtor to file a such a plan would involve drafting a plan and an accompanying disclosure statement, holding a hearing on the disclosure statement and a separate hearing on the plan, and performing the necessary administrative tasks associated with seeking the approval of such a plan. The costs associate with such process are anticipated to be substantial, significantly reducing what remains from the Sale Proceeds. Currently, the Debtor has a small amount of funds to distribute to creditors and pursuing this course would substantially diminish such funds with no offsetting benefit to creditors.

Moreover, any plan that would be filed most likely would involve dismissal of the case according to the Dismissal Procedures proposed above. Thus requiring the Debtor to file a plan would only postpone the outcome sought in this Motion and unnecessarily reduce and delay distributions to creditors.

Notably, the proposed Dismissal Procedures strictly implement the priorities established in the Bankruptcy Code, including section 507(a). There is nothing odd or unusual about the Dismissal Procedures that suggests they would need to be part of a chapter 11 plan. Rather, the straight-forward application of the priorities of the Bankruptcy Code adopted in the Dismissal Procedures is tailor made for a structured dismissal.

The alternative of converting this case to a Chapter 7 and appointing a trustee would similarly have inefficient and creditor-harming results with no offsetting benefits. Any trustee would have to become familiar with the Debtor, its estate, its creditors, and the Bankruptcy Case. In doing so, the trustee would create additional administrative costs to the estate, which would substantially reduce the amount available for distribution to

creditors. Then, once these costs had been incurred, the trustee very likely would seek to distribute the reduced estate to creditors in a manner similar to that described in the Dismissal Procedures (with such distribution further reduced on account of the commission that would be due to the chapter 7 trustee). In addition to being harmful to creditors, such a process is entirely unnecessary, where, as here, the Debtor stands poised to distribute its estate to its creditors in the manner described in the Dismissal Procedures. Dismissal of the Bankruptcy Case as requested here represents the least expensive and most equitable alternative for distribution of the Debtor's assets.

Courts have recognized dismissals, and in particular structured dismissals, to be appropriate and in the best interests of creditors in similar circumstances. *See, e.g., In re Buffet Partners, L.P.*, 2014 WL 3735804 *3 (Bankr. N.D. Tex. July 28, 2014) (approving a structured dismissal where other options of conversion or plan confirmation "would add significant and unnecessary time and expense," noting that "there is not much in the way of assets left to administered," and that the "the economic value of the Debtor in this case will be served by dismissing the case, rather than converting it"). *In re Clement Support Services, Inc.*, No. 15-50794-MEH (Bankr. N.D. Cal. Order entered December 17, 2015) (Hammond, J.); *In re Easy Life Furniture Inc.*, No. 14-12713-CB (Bankr. C.D. Cal Order entered March 23, 2015) (Bauer, J.); *In re William M. Lansdale*, 8:09-bk-22982-ES (Bankr. C.D. Cal. Order entered March 4, 2010) (Smith, J.) (dismissing case following settlement subject to payment of claims, professional fees, and U.S. Trustees, among other things).

This Court should follow suit and issue an order dismissing this case and approving the Dismissal Procedures, so that the economic value of the Debtor's estate can be preserved for the benefit of creditors to the maximum extent possible.

Case: 16-30390 Doc# 107 Filed: 11/10/16 Entered: 11/10/16 16:06:36 Page 17 of 18

**V.**

**CONCLUSION**

For the reasons stated above, the Debtor requests that this Court issue an order dismissing this chapter 11 case, approving the Dismissal Procedures, and providing related relief.

Dated: November 10, 2016 SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *\/s/ Ori Katz*
ORI KATZ
ROBERT K. SAHYAN
MATT R. KLINGER

Counsel for Old PXPRT, Inc.
f/k/a PopExpert, Inc.,